UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST VIEW RESEARCH, LLC, a California corporation,<br><br>                                Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware corporation; and BMW MANUFACTURING CO., LLC, a Delaware corporation,<br><br>                                Defendants. | Case No.: 16-CV-2590 JLS (AGS)<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>(ECF No. 38) |

   Presently before the Court is Defendants BMW of North America, LLC's and BMW Manufacturing Co., LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3). ("MTD," ECF No. 38.)  Specifically, Defendants seek to dismiss or alternatively transfer this case for improper venue following the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).  (*See generally* MTD.)  Also before the Court are Plaintiff's Response in Opposition to, ("Opp'n," ECF No. 45), and Defendants' Reply in Support of, ("Reply," ECF No. 46), the Motion to Dismiss.  The Court vacated the hearing on the matter and took the motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF

No. 47.) The Court also requested supplemental briefing concerning the application of the Federal Circuit's decision in *In re Cray, Inc.*, 871 F.3d 1355 (2017) to the present case; both Plaintiff, ("West View Supp. Br.," ECF No. 58), and Defendants, ("BMW Supp. Br.," ECF No. 61) filed briefs. After considering the parties' arguments and the law, the Court rules as follows.

## BACKGROUND

On October 17, 2016, Plaintiff filed its Complaint alleging patent infringement. (*See* ECF No. 1.) Both Defendants answered on November 28, 2016 and denied venue was proper. (ECF Nos. 16, 17, ¶ 4.) Defendants then filed a motion to transfer the case to a different court in this District, (ECF No. 21), which the Court denied, (ECF No. 25), and a motion to reduce the number of asserted claims, (ECF No. 30), which the Court granted, (ECF No. 32). On May 22, 2017, the Supreme Court rendered its judgment in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), which clarified the scope of the patent venue statute, 28 U.S.C. § 1400(b). On June 15, 2017, the parties filed their joint claim construction chart, worksheet, and hearing statement. (ECF Nos. 35–37.) Then, on July 11, 2017, Defendants filed the present motion.

## LEGAL STANDARD

Title 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A party may move to dismiss an action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In deciding a Rule 12(b)(3) motion, a court need not accept the pleadings as true and may consider facts outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). "Plaintiff bears the burden of showing that venue is proper." *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1183 (N.D. Cal. 2014) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).

In patent infringement actions, venue is proper "in the judicial district where the

defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516–17 (2017) (reaffirming its previous decision in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957), and holding "that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute").

## ANALYSIS

Defendants argue that Plaintiff fails to establish that venue is proper in the Southern District of California (the "District"), because Defendants are not incorporated in this state and do not maintain a regular and established place of business in this District. (*See generally* MTD.) Defendants also argue that their motion is timely, even though such a motion is waivable. (*Id.* at 5.)[1] The Court first addresses the threshold issue of whether Defendants have waived venue before considering the merits of their motion.

**I.  Whether BMW Defendants Waived Their Venue Objection**

As an initial matter, Defendants admit that improper venue is a defense which can be waived. (*Id.* (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Commercial Cas. Ins. Co. v. Consol. Stone Co.*, 278 U.S. 177 (1929)).) Defendants note that their respective Answers did not admit that venue was proper. (*Id.*) Defendants counterclaimed seeking declaratory relief and, in the counterclaim, they admitted venue was proper. (*E.g.*, ECF No. 16, at 51, ¶ 6.) However, Defendants argue that although they did not challenge venue when they filed their Answers, their motion is timely because they could not have challenged venue prior to the recent Supreme Court decision in *TC Heartland*. (MTD 5.) In other words, Defendants argue that this recent case constitutes an exception to the waiver rule as an intervening change in law. (*Id.*) They also argue that they did not waive a venue defense by admitting in their counterclaims

---

[1] Pin citations refer to the page numbers electronically stamped on the EM/CMF filings.

because the counterclaim was compulsory. (Reply 7–8 (citing, e.g., *Ironburg Inventions Ltd. v. Valve Corp.*, No. 15-CV-4219-TWT, 2017 WL 3307657, at *1 (N.D. Ga. Aug. 3, 2017) (finding venue improper even though counterclaim pled venue was proper)).)

### A. Federal Rule of Civil Procedure 12(h)(1) Waiver

Federal Rule of Civil Procedure 12(h)(1) provides that "[a] party waives any defense listed in Rule 12(b)(2)–(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h)(1). Rule 12(g)(2) states "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). A defense is unavailable if "its legal basis did not exist at the time of the answer or pre-answer motion." *Gilmore v. Palestinian Interim Self-Gov. Auth.*, 843 F.3d 958, 964–65 (D.C. Cir. 2016). The Ninth Circuit also recognizes that "an exception to the waiver rule exists for intervening changes in the law." *See, e.g.*, *Big Horn Cnty. Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000). Thus, "[w]hen a decision from the Supreme Court has undercut the theory or reasoning underlying [a] prior circuit precedent in such a way that the cases are clearly irreconcilable . . . a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (internal quotation marks omitted).

The question here is whether the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), constituted an intervening change in the law such that Defendant's venue defense was not available at the time of its answer or pre-answer motion. The Federal Circuit squarely addressed this question in *In re Micron Technology, Inc.*, 875 F.3d 1091 (Fed. Cir. 2017). The court held that, as a matter of law, the venue defense was not available before the Supreme Court's opinion. *Id.* at 1098 ("The venue objection was not available until the Supreme Court decided *TC Heartland* because, before then, it would have been improper, given controlling

precedent, for the district court to dismiss or to transfer for lack of venue.").

Here, Defendants' filed Answers on November 28, 2016, but did not pursue an affirmative defense based on venue. At the time of the Answers, a venue affirmative defense was not available; it was not available until May 22, 2017 when the Supreme Court decided *TC Heartland*. *See id.* at 1096, 1101. Defendants filed their Motion to Dismiss, based on improper venue, on July 11, 2017, (ECF No. 38)—less than two months after the Supreme Court's decision. Further, the only activity in between the Supreme Court's decision and Defendants' filing was the submission of joint claim construction charts, worksheet, and hearing statement on June 15, 2017, (*see* ECF Nos. 35–37). Defendants' present venue defense is in close proximity in time to the *TC Heartland* decision and this factor weighs against finding waiver.

### B. Non-Rule Waiver

That is not the end of the inquiry, however. The *Micron* court also noted that there might be circumstances where a defendant may have waived a venue defense even when the defense was not "available" under Rules 12(h)(1)(A) and 12(g)(2). *See id.* at 1100. The Supreme Court recently reiterated that the Federal Rules of Civil Procedure "are not all encompassing" and that there are "standard procedural devices trial courts around the country use every day in service of Rule 1's paramount command: the just, speedy, and inexpensive resolution of disputes." *Id.* (quoting *Dietz v. Bouldin, Inc.*, 136 S. Ct. 1885, 1891 (2016)). The Federal Circuit concluded, "apart from Rule 12(g)(2) and (h)(1)(A), district courts have authority to find forfeiture of a venue objection. This authority is properly exercised within the framework of *Dietz*, which requires respecting, and not "circumvent[ing]," relevant rights granted by statute or Rule. *Id.* at 1101 (alteration in original) (quoting *Dietz*, 136 S. Ct. at 1892). The court stated timeliness was a logical starting point to determine non-Rule waiver of venue. Thus, a court may inquire "whether based on timeliness or consent or distinct grounds[] a defendant's tactical wait-and-see bypassing of an opportunity to declare a desire for a different forum, where the course of proceedings might well have been altered by such a declaration." *Id.* at 1102.

The Federal Circuit stated that its timeliness concerns were not limited to the proximity in time to *TC Heartland* a defendant might raise a venue defense. The *Micron* court declined to give a precedential answer as to "whether the timeliness determination may take into account other factors other than sheer time from when the defense becomes available to when it is asserted, including factors such as how near is the trial." 875 F.3d at 1102. However, the court cited several cases where the Federal Circuit denied a writ of mandamus when district courts denied venue objections based on *TC Heartland* that were weeks or months before trial. *Id.* 1102 n.4 (citing, e.g., *In re Nintendo of Am. Inc.*, No. 2017-127, 2017 WL 4581670 (Fed. Cir. July 26, 2017) (venue motion less than three months before trial)). Thus, litigation that has proceeded to the eve of trial generally will have waived a venue defense, even if the defense itself was filed close in time to *TC Heartland* and would be allowed under Rules 12(g)(2) and (h)(1)(A).

Here, Plaintiff argues that prior to the present Motion, Defendants litigated in this Court for approximately nine months. (Opp'n 10.) Defendants took the following actions in this proceeding: (i) bringing a motion to transfer the case to another Judge within the same District, (ii) bringing a motion to reduce the number of claims asserted by Plaintiff, (iii) participating in an Early Neutral Evaluation, (iv) propounding discovery requests on Plaintiff, (v) serving invalidity contentions, (vi) exchanging claim construction positions, and (vii) negotiating and submitting a Joint Claim Construction Worksheet, Chart, and Hearing Statement with Plaintiff. (*Id.*) Plaintiff compares these facts to those in *Infogation Corp. v. HTC Corp.*, No. 16-CV-01902-H-JLB, 2017 WL 2869717, at *3 (S.D. Cal. July 5, 2017), where the district court found defendant's course of conduct waived a venue defense. (Opp'n 12.) *Infogation* involved a defendant who had filed invalidity contentions, two motions to stay, a motion for judgment on the pleadings, and participated in claim construction. 2017 WL 2869717, at *3. Plaintiff states that the *Infogation* court found especially important the fact that the defendants there filed a motion for judgment on the pleadings because "courts have found implied waiver of venue where a party has . . . actively pursued substantive motions." (Opp'n 12

1  (quoting *Infogation*, 2017 WL 2869717, at *3).)  Plaintiff contends that Defendants'
2  motion to transfer this case within the District, (*see* ECF No. 21), and the motion to
3  reduce the number of claims, (*see* ECF No. 30), rise to the level of "substantive
4  litigation." (Opp'n 13.)

5  Defendants respond that they have not filed any substantive motions.  (Reply 7.)
6  Specifically, Defendants argue that their motion to transfer and motion to reduce
7  Plaintiff's claims do not rise to the level of waiving a venue defense because they are not
8  substantive.  (*Id.* (citing *Maxchief Invs. Ltd. v. Plastic Dev. Grp.*, No. 16-CV-63, 2017
9  WL 3479504, at *3–4 (E.D. Tenn. Aug. 14, 2017) (prior non-dispositive motion practice
10 did not waive venue)).)

11 The Court begins with the Federal Circuit's guidance in *Micron*, the most recent
12 pronouncement on venue waiver.  The *Micron* court cited several cases where the Federal
13 Circuit denied mandamus petitions challenging venue, based on *TC Heartland*, where the
14 underlying cases were within weeks or months of trial.  *See* 875 F.3d at 1102 n.4.  Unlike
15 the cases cited by the *Micron* court, this case is not within weeks or months of trial.  For
16 example, the Court has not conducted a claim construction hearing.  Further, as the Court
17 will discuss, Defendants have not filed any dispositive motions that would terminate this
18 litigation.

19 Plaintiff contends that the facts here are "extremely similar" to the facts in
20 *Infogation*.  (Opp'n 12 (citing *Infogation*, 2017 WL2869717, at *3).)  The Court
21 disagrees.  The *Infogation* court found it persuasive that a party that pursues "substantive
22 motions" to have waived venue.  2017 WL2869717, at *3.  The Court agrees with this
23 analysis and examines whether Defendants' conduct constitutes active pursuit of
24 substantive motions.  The district court in *Meras Engineering Inc. v. CH20, Inc.*, No. C-
25 11-389 EMC, 2013 WL 146341, at *8 (N.D. Cal. Jan. 14, 2013)), the case on which
26 *Infogation* relies to define "substantive motions," stated that "no waiver has been found
27 where parties merely participated in pretrial motions, moved to dismiss after discovery
28 has been completed, or where the opposing party was not prejudiced by dismissal." 2013

WL 146341, at *8 (quoting *Ferraro Foods, Inc. v. M/V IZZET INCEKARA*, 01 CIV. 2682(RWS), 2001 WL 940562, at *4 (S.D.N.Y. Aug. 20, 2001)); *see also Sherman v. Moore*, 86 F.R.D. 471, 474 (S.D.N.Y. 1980) (finding defendant did not waive defense of improper venue by engaging in discovery after filing answer and before filing a motion to dismiss for improper venue).

The Court finds that Defendants' litigation in these proceedings does not constitute substantive motions. Defendants have not filed any motions that would terminate this litigation like a motion for judgment on the pleadings, *see Infogation*, 2017 WL 2869717, at *3, or a motion for summary judgment, *see Amax, Inc., v. ACCO Brand Corp.*, No. CV 16-10695-NMG, 2017 WL 2818986, at *2 (D. Mass. June 29, 2017) ("By filing an early motion for summary judgment, defendant abandoned its defense of improper venue."). Defendants' two motions—to transfer to a different court in this District and to narrow the claims—do not reach the merits of Plaintiff's infringement claims. Further, Defendants' participation in joint claim construction filings does not waive venue. *Cf. Lites Out, LLC v. OutdoorLink, Inc.*, No. 17-CV-192, 2017 WL 5068348, at *4 (E.D. Tex. Nov. 2, 2017) (finding that defendant did not waive venue even when defendant participated in claim construction hearing after it filed venue challenge).

In sum, this case is not within weeks or months of trial. Nor have Defendants filed substantive motions. Accordingly, the Court finds that Defendants did not waive their objection to venue.

## II. Whether Venue Is Proper in this District

### A. Legal Standard

Having determined that Defendants did not waive their venue challenge, the Court must now consider whether venue is proper in this judicial district. As discussed, venue is proper (1) in the judicial district where the defendant resides, or (2) where the defendant (i) has committed acts of infringement and (ii) has a regular and established place of business. *See* 28 U.S.C. § 1400(b). A domestic corporation resides only in its state of incorporation. *See TC Heartland*, 137 S. Ct. at 1516–17. No party disputes that

Defendants are both incorporated in Delaware, (s*ee, e.g.*, Compl. ¶¶ 2–3, ECF No. 1; Declaration of Jessica Kelleher ("Kelleher Decl.") ¶¶ 2, 4, ECF No. 38-2). Venue is not proper under § 1400(b)(1). Thus, the Court must determine whether Defendants have committed acts of infringement and have a regular and established place of business in this District. Defendants do not dispute that they have committed an act of infringement in this District, so the Court need not reach that issue.[2]

Section 1400(b) does not define what constitutes "a regular and established place of business." The Federal Circuit recently clarified the analysis to determine what constitutes a regular and established place of business. *See In re Cray, Inc.*, 871 F.3d 1355 (Fed. Cir. 2017). There are three general requirements to determine a regular and established place of business: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *Id.* at 1360. The first element requires a "physical, geographical location in the district from which business is carried out." *Id.* at 1362. The second element requires a business to be both regular and established. Regular means a business that operates in a "steady[,] uniform[,] orderly[, and] methodical manner." *Id.* (alterations in original) (quoting William Dwight Whitney, *The Century Dictionary* 5050 (Benjamin E. Smith, ed. 1911)). Furthermore, an "established" business means one that is fixed and not transient—"while a business can certainly move its location, it must for a meaningful time period be stable, established." *Id.* at 1363.

The third element requires that the place of business must be the defendant's and not solely the place of the defendant's employee. *Id.* "[T]he defendant must establish or ratify the place of business." *Id.* "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the

---

[2] Furthermore, whether any act of infringement has occurred is reserved for trial; allegations of infringement are sufficient for a venue determination. *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). Plaintiff alleges Defendant committed, or made meaningful preparations to commit, acts of infringement in the Southern District. (*See, e.g.*, ECF No. 1, ¶ 5.) Therefore, such allegations are sufficient for venue determination.

place." *Id.* Additionally, a court may consider if the employer "conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place." *Id.* Finally, a court can consider whether the defendant represents to the public that the location is a place of business by listing the alleged place on a website, phone book or other directory, or places a sign on the building itself. *Id.*

### B. Application of In re Cray Standard

With the forgoing analysis in mind, the Court now turns to its application in the present case. Here, Defendants argue that venue is not proper in this District because they do not maintain a regular and established place of business in this District. BMW Manufacturing Co. ("BMWMC") operates a plant in Greer, South Carolina, where it produces BMW-brand Sports Activity Vehicles. (Kelleher Decl. ¶ 2.) BMWMC employs over 9,000 people at its South Carolina plant. (*Id.*) By contrast, BMWMC (1) has no facilities and no employees in the Southern District of California; (2) neither owns nor leases any property in this District; (3) does not sell any products and has no customers in this District; and (4) is not licensed to do business in California. (*Id.* ¶ 3.)

BMW of North America ("BMWNA") imports and distributes BMW and MINI brand vehicles in the United States. (*Id.* ¶ 4.) Its headquarters is located in Woodcliff Lake, New Jersey and it has regional offices in several locations in the United States, including in the Los Angeles, California area. (*Id.*) BMWNA is licensed to do business in California. (*Id.*) BMWNA has no facilities in this District, and neither owns nor leases any property therein. (*Id.* ¶ 5.)

BMWNA distributes vehicles to five BMW and MINI dealers in this District. (*Id.*) Defendants state that these dealers are independent businesses that are not owned or controlled by BMWNA, and the employees in these dealers work for the dealer, not BMWNA. (*Id.*) These dealerships make up approximately 2% of BMWNA's U.S. sales. (*Id.*) BMWNA also employs one person who lives and works in the Southern District. (*Id.* ¶ 6.) The Court discusses each ground for venue in turn.

### 1. Whether BMW and MINI Dealerships Establish Venue

Plaintiff argues that despite no physical BMWNA or BMWMC office, venue is proper because of the numerous sales people and dealerships in this District (1) which BMWNA controls, and (2) for which BMWMC is the sole manufacturer of the allegedly infringing product. (Opp'n 15.) As to BMWNA, Plaintiff argues that it exercises "near-complete control" over the dealers in this District pursuant to strict contractual relationships with these dealers. (*Id.*; *see also* West View Supp. Br. 11.)[3] The parties conducted limited venue-related discovery and produced an operating agreement between BMWNA and a dealership (or "Center"), which the parties stipulated is representative of similar agreements with BMW and MINI dealerships across the District. (Plaintiff Supp. Br., Ex. E, at 149–50.) Plaintiff zeroes in on the language in *Cray* that "[r]elevant considerations include whether the defendant owns or leases the place, **or exercises other attributes of possession or control over the place**." (*Id.* at 11 (quoting *Cray*, 871 F.3d at 1363).)

Plaintiff then rigorously examines the operating agreement, which consists of the agreement itself, (*see id.*, Ex. A (Sealed Document), at 34), and the requirements addendum, (*see id.*, Ex. B (Sealed Document), at 53). Plaintiff lists at least thirty examples of BMWNA's control in the operating agreement. A non-exhaustive list of examples of BMWNA's control over the dealerships includes: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 11–12.) In sum, Plaintiff argues that the thirty separate provisions from the operating agreement are illustrative of BMWNA's control over the dealerships. (*See id.* at 11–18.)

---

[3] The Court granted Plaintiff's Motion to file its supplemental briefing and exhibits under seal. (*See* ECF No. 62.) Plaintiff did not distinguish which portions of its supplemental briefing rely on redacted material; therefore, the Court will redact any references in this Order relying on the sealed exhibits, but not statements of law or arguments not relying on sealed exhibits.

1	Plaintiff also argues that Defendants meet *Cray*'s consideration that a defendant
2	can condition employment on an employee's continued residence in the district. (*Id.* at
3	18 (quoting *Cray*, 871 F.3d at 1363).) ███████████████████
4	████████████████████████████████████
5	████████████████████████████████ (*Id.*)
6	According to Plaintiff, this provision in the operation agreement essentially conditions
7	employment on sales performance in the Southern District. (*See id.*)

8	Next, Plaintiff argues that BMWNA prominently advertises the BMW brand at the
9	dealerships, which meets the *Cray* court's consideration that "[m]arketing or
10	advertisements also may be relevant, but only to the extent they indicate that the
11	defendant itself holds out a place for its business." (*Id.* at 19 (quoting *Cray*, 871 F.3d at
12	1363).) Finally, Plaintiff distinguishes the employees in *Cray* with the BMW dealership
13	employees. That is, the employees in *Cray* did not serve the customers in the judicial
14	district there, but here the dealership employees are serving customers in the Southern
15	District. (*Id.* at 24–25.) Taking all these facts together, Plaintiff contends that
16	Defendants effectively control all aspects of its dealers' operations. (*Id.* at 29.)

17	In reply, Defendants concedes that the dealerships in the Southern District meet the
18	first two elements of the *Cray* standard, but argues that the dealerships fail the third
19	element: the dealerships are not owned or controlled by Defendants. (*See* BMW Supp.
20	Br. 6.) Defendant argues the dealerships are separate corporate entities; the operator of
21	the dealership in the operating agreement is ███████████, the owner dealership is
22	███████████. (*Id.* at 7 (citing West View Supp. Br., Ex. A).)

23	The Court begins its analysis with the *Cray* standard. Both parties agree the first
24	two elements are met as to the dealerships. The only dispute is whether the dealerships
25	are owned or controlled by Defendants or whether they are independent businesses that
26	are not owned or controlled by Defendants. The third *Cray* element requires the physical
27	location to be the place of Defendants, not solely a place of Defendants' employees.
28	Plaintiff would have the Court find Defendants' control over the dealerships, evidenced

by the operating agreement, to meet the third requirement. The Court disagrees. Plaintiff's argument ignores the difference between separate and distinct corporate entities.

One theory under which the Court could find that the dealerships belong to the Defendants is if they are merely alter egos of Defendants. In *Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.*, the Federal Circuit held "a court which has jurisdiction over a corporation has jurisdiction over its alter egos." 757 F.2d 1256, 1265 (Fed. Cir. 1985) (citing, e.g., *Lakota Girl Scout Council v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)). The court also held that piercing the corporate veil, in order to ascertain the alter ego entity, is appropriate in order to establish venue under the patent venue statutes. *Id.* (citing *Acme Card Sys. Co. v. Remington Rand Bus. Serv., Inc.*, 21 F. Supp. 742 (D. Md. 1937); and *Leach Co v. General Sani-Can Mfg. Co.*, 393 F.2d 183 (7th Cir. 1968)). *In re Cray* did not appear to disturb the holding in *Minnesota Mining*. *See Javelin Pharms., Inc. v. Mylan Labs. Ltd.*, No. 16-224-LPS, 2017 WL 5953296, at *3 (D. Del. Dec. 1, 2017). However, in order to pierce the corporate veil the Court would need to find several factors—none of which are present here—including: whether a single individual owns substantially all the stock of a corporation, whether insistence on the corporate form to enable the stockholder to avoid legal liability. *See Minn. Mining*, 757 F.2d at 1264–65. Here, Defendants are two distinct corporate entities: BMW of North America, LLC and BMW Manufacturing Co., LLC. The dealerships are also separate corporate entities; the operator of the dealership listed in the representative operating agreement is ███████████., the owner dealership is ███████████ (BMW Supp. Br. 7 (citing West View Supp. Br., Ex. A.).) There is no evidence that suggests that these entities are alter egos of Defendants. *See, e.g.*, *Post Consumer Brands, LLC v. General Mills, Inc.*, No. 17-CV-2471 SNLJ, 2017 WL 4865936, at *2 (E.D. Mo. Oct. 27, 2017) ("[E]xcept where corporate formalities are ignored and an alter ego relationship exists, the presence of a corporate relative in the district does not establish venue [under the patent venue statute]." (citations omitted)).

A second possible theory is that the Court could ignore the formal corporate separateness of Defendants and the dealerships. The separate and distinct corporate forms are not easily brushed aside. Generally, "when separate, but closely related, corporations are involved . . . the rule is similar to that applied for purposes of service of process. So long as a formal separation of the entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other." *Symbology Innovations, LLC v. Lego Sys., Inc.*, —F. Supp. 3d—, No. 17-cv-86, 2017 WL 4324841, at *10 (E.D. Va. Sept. 28, 2017) (quoting Charles A. Wright et al., *Federal Practice and Procedure*, § 3823 (4th ed. 2017)). Thus, in *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 334 (1925), the Supreme Court considered whether a corporation was "doing business" in North Carolina because of a subsidiary's presence there. The Supreme Court held that despite the fact that the parent corporation controlled the subsidiary's operations and the companies shared a unitary business purpose, the subsidiary's presence in the forum could not be imputed to the parent company as long as they maintained formal corporate separateness. *Id.* at 335.

Other district courts have applied this reasoning to patent venue questions. For example, in *Symbology Innovations, LLC v. Lego Systems, Inc.*, the court found that three stores that sold the defendant's product and owned by a separate corporate subsidiary from the parent defendant were not the same entity. 2017 WL 4324841, at *11; *see also Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*, No. 17-cv-1076-M, 2017 WL 6505793, at *8 (N.D. Tex. Nov. 17, 2017) (declining to ignore corporate formalities of defendant and related corporate entity).

In *CAO Lighting, Inc. v. Light Efficient Design*, No. 16-cv-482-DCN, 2017 WL 4556717, at *2 (D. Idaho Oct. 11, 2017), the defendant, a Utah corporation, distributed products to seventeen "preferred partner" distributors, each with physical locations in Idaho. The defendant corporation had agreements with the preferred distributors where defendant had to stock its product with these distributors, the distributors had to display marketing materials, and the defendant had to indemnify the distributors. *Id.* Despite a

distribution agreement between the defendant and distributors, the court concluded that the physical locations in Idaho belonged to the distributors and not to the defendant. *Id.* at *3; *see also Patent Holder, LLC v. Lone Wolf Distributors, Inc.*, No. 17-23060-Civ-Scola, 2017 WL 5032989, at *6 (S.D. Fla. Nov. 1, 2017) ("[Plaintiff] argues that dealers may be selling [defendant's] products in this District. Even assuming *arguendo* that [plaintiff] is correct, this fact fails to support a finding that venue is proper under § 1400(b) because it does not have any bearing on whether [defendant] maintains a physical place within the District." (citations omitted)).

Finally, in *Shapiro v. Ford Motor Co.*, 359 F. Supp. 350, 352 (D. Md. 1973), the district court examined whether venue was proper in Maryland for the Ford Motor Company based on its subsidiaries and wholly or partially owned dealerships in Maryland. There, Ford operated twelve dealerships in Maryland and Ford owned an interest in two of those dealerships. *Id.* at 355. The court held that

> even where there is a unitary business purpose to manufacture and sell to ultimate consumers, if the operations of the two or more functional components of that unitary business purpose are themselves vested in formally separate entities, then venue over one under § 1400(b) cannot be gained by treating the regular and established place of business of the other as the office of the former.

*Id.* at 357 (citing *Manville Boiler Co. v. Columbia Boiler Co.*, 269 F.2d 600 (4th Cir. 1959)).

Here, Defendants and the dealerships are separate corporate entities. In cases like *Symbology Innovations* and *Galderma Laboratories* the district courts did not depart from the separate corporate forms even when the entities were subsidiaries of a parent defendant corporation. Here, the facts are further distinguishable because there is no fact supporting that Defendants are the parent corporations of the dealerships owners or operators. Additionally, *Shapiro* found no venue even when the parent corporation (Ford) owned in whole or in part dealerships in the relevant judicial district. Here, there are no facts that Defendants even own any interest in the dealerships. Plaintiff's theory is

predicated on the Defendants' operating agreement with the BMW and MINI dealerships exerting such control that the dealerships are essentially the same entity. This theory ignores the separate corporate forms of Defendants and the dealerships. The Court finds no facts to support collapsing the corporate forms; the dealerships' physical locations are not places of Defendants.

### 2. *Whether BMWNA's Employee Establishes Venue*

BMWNA has one employee located in this District—an area manager who acts as a liaison between BMWNA and the dealerships in her assigned network. (Kelleher Decl. ¶ 6.) The employee works out of her home one day each week and visits dealerships in the Southern District the remaining business days. (*Id.*) Neither party offers any additional facts pertaining to this employee. The Court analyzes venue as to the employee's home.[4]

The employee's house likely meets the first two *Cray* requirements. The employee's house is a fixed, physical location in the district and is in some way connected to Defendants' business in the District. However, the employee's house is not a place "of the defendant." *Cray*, 871 F.3d at 1360. In applying *Cray*, no one fact is controlling. *Id.* at 1366. There are no facts that Defendants control, own, or leases the employee's house or that Defendants publicly advertise or list the employee's home as a place where Defendants conduct business. It is not clear whether Defendants conditioned employment on the employee's residence in the Southern District.[5] Nor are they any facts that the employee maintains product literature or products at her home. The Court finds that the employee's home does belong to Defendants. *See id.* at 1364 ("The statute clearly requires that venue be laid where 'the defendants has a regular and established

---

[4] Because the Court found that the physical locations of the dealerships do not belong to Defendants, it need not consider whether BMWNA's employee somehow creates venue at the dealership location by visiting the locations during the business week.

[5] The Court notes that it is possible that BMWNA's employee, who services dealerships in the Southern District, would need to reside in the Southern District as a condition of employment. *See Cray*, 871 F.3d at 1363. However, Plaintiff did not pursue this possibility in its venue-related discovery and the Court will not infer facts that are not supported by the record.

place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant." (quoting *Am. Cyanamid Co. v. Nopco Chem. Co.*, 388 F.2d 818, 820 (4th Cir. 1968))).

Therefore, the Court finds that BMWNA and BMWMC do not own or control the dealerships or the employee's home in the District for the purposes of the *In re Cray* test and 28 U.S.C. § 1400(b)(2). There are no physical locations carrying on a regular and established business that are owned, controlled or possessed by Defendants. Plaintiff, who has the burden to prove venue, *see Kaia Foods, Inc.*, 70 F. Supp. 3d at 1183, has not established that venue is proper in this District.

**III. Whether This Case Should Be Dismissed or Transferred**

28 U.S.C. § 1406(a) provides that if a case is in the wrong district court because of improper venue then the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district court has discretion whether to transfer or dismiss a case. *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 805 (9th Cir. 1991). Generally, transfer should be the usual choice instead of dismissal. *United States v. Miller-Stauch Const. Co.*, 904 F. Supp. 1209, 1214 (D. Kan. 1995) (citing 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3827, at 274 (1986)); *see also CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*, 650 F. Supp. 57, 60 (D.V.I. 1986).

Here, Defendant requests the Complaint be dismissed for improper venue or, alternatively, to transfer venue to the District of Delaware where both Defendants reside. (MTD 13.) Plaintiff objects to transfer and states that a transfer would not be in the interest of justice. (Opp'n 28.)

28 U.S.C. section 1406 addresses when venue has been laid in an improper district. If venue is improper in this District under § 1400(b) then the Court must take one of two options: dismiss the case or transfer to a district where venue is proper. *See* 28 U.S.C. § 1406(a); *see Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013) (stating that if venue is improper "the case must be dismissed or

transferred under § 1406(a)").

Defendants request transfer to the District Court for the District of Delaware. Both BMWNA and BMWMC are incorporated in Delaware, but their respective principal places of business are in different states. (*See* MTD 6.) The District of Delaware is the judicial district where venue is proper as to both BMWNA and BMWMC. *See TC Heartland*, 1137 S. Ct. at 1521.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Transfer Venue, (ECF No. 38), and **TRANSFERS** the case to the District Court for the District of Delaware.

**IT IS SO ORDERED.**

Dated: February 5, 2018

*[signature]*
Hon. Janis L. Sammartino
United States District Judge